**IN THE SUPERIOR COURT OF GUAM**

| | | |
|---|---|---|
| MICAH BRIANA DALCOE, | ) | Domestic Case No. DM0368-18 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DECISION AND ORDER** |
| vs. | ) | |
| | ) | |
| | ) | |
| JAZMINE CHASITY DALCOE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

### INTRODUCTION

This matter is before the Honorable Michael J. Bordallo on Plaintiff Micah Briana Dalcoe's ("Micah") Amended Motion for Modification of Child Custody. Micah is represented by Attorney Michael J. Berman. Defendant Jazmine Chasity Dalcoe ("Jazmine") appears *pro se.*

### BACKGROUND

On April 16, 2019, Micah filed a Motion for Modification of Child Custody. On May 10, 2019, Micah filed an Amended Motion for Modification of Child Custody. On August 14, 2019, Jazmine filed an Answer in Support of Amended Motion for Modification of Child Custody. Jazmine filed a Second Answer two days later on August 16, 2019. On August 26, 2019, the Court issued a Briefing Order which stated that Jazmine's filings were untimely but would nonetheless be addressed by the Court. Micah was provided with two weeks to reply to

Jazmine's Answers. On September 9, 2019, Micah filed a Reply to Defendant's Answers and the Court took the matter under advisement.

### FACTS

1. Micah and Jazmine were married on July 2, 2015, in Atlanta, Georgia.

2. There is one minor child of the marriage, C.G.D. ("the minor child"), born August 23, 2016.

3. The parties separated on May 25, 2018.

4. On June 5, 2018, the parties signed a Custody Agreement and Parenting Plan ("Custody Agreement").

5. Also on June 5, 2018, the parties entered into a Divorce and Property Settlement Agreement ("Settlement Agreement").

6. On July 16, 2018, the Court entered a Final Decree of Divorce. The Decree incorporated the Divorce and Property Settlement Agreement.

7. Micah currently resides in Illinois and Jazmine currently resides in Georgia.

8. Pursuant to the Settlement Agreement, Micah is to have primary physical custody of the minor child and Jazmine is to have reasonable visitation.

9. On December 29, 2018, the parties agreed that Jazmine would have physical custody of the minor child from January 23, 2019, to April 3, 2019, and that they would exchange custody in Hawaii at the end of the visitation period. Jazmine later informed Micah that she would not travel to Hawaii to exchange custody and that Micah would need to go to Georgia to regain custody of the minor child.

10. Jazmine claims she changed the exchange location with sufficient time for Micah to cancel the reservation for her hotel in Hawaii: "I told the Plaintiff best friend (Z'a

Williams) mid-February about the change of the Plaintiff and myself meet-up location. which would've given the Plaintiff enough time to cancel the reservation for the hotel in Hawaii." Micah denies that Jazmine provided adequate notice of the change in exchange location. "The Defendant never informed my Georgia attorney, Attorney Z'a Williams, of an alternate date and time to pick up our son in February 2019."

11. The parties also dispute the reason for the change in exchange location. Jazmine states that she refused to travel to Hawaii because the parties had gotten into an argument which led Jazmine to be afraid to meet Micah in a state other than Jazmine's home state. Micah states there was "never a big argument between the two of us other than her outright refusal to return our son to me upon her discovery of my newly attained marital status. Attorney Williams relayed to me that at no time did Jazmine fear me or cite fear as the motivation for the Defendant's breach of agreement."

12. The parties have provided differing accounts as to what happened upon Micah's arrival in Georgia. Micah states that upon her arrival in Georgia, Jazmine refused to exchange custody and the police had to be called to visit Jazmine's residence to ensure the exchange. Micah alleges that there was a tense situation where Jazmine refused to transfer custody, and it was only after the police officers threated arresting her that Jazmine agreed to relinquish custody. Jazmine states that she never refused to exchange custody when the police arrived at her residence. She also states that she never told the police that she would rather go to jail than exchange custody and that the police never threatened to arrest her. Lastly, Jazmine states that she was unaware that her adoptive mother had spoken to Micah, and was therefore unaware that Micah planned on arriving at the residence of the middle of the night.

13. Jazmine states that the minor child was asleep during the ordeal between herself, Micah, and the police. Micah states that the minor child was awake and watching television and was visibly disturbed by the event.

14. The parties dispute whether Jazmine willingly provided Micah with the minor child's passport. Micah states that Jazmine refused to provide Micah with the minor child's passport during the exchange in which the police were involved. Jazmine denies that Micah repeatedly asked for the minor child's passport. According to Jazmine, she informed the police officers that the minor child's passport was locked in her best friend's safe, and that Jazmine would get the passport in the morning in order to give it to Micah. Jazmine states that she was unable to contact Micah the next day, but learned from her best friend that Micah had already left for Guam and therefore mailed the passport to Guam.

15. The parties dispute whether Micah was made aware of the minor child's health problems which occurred while he was in Jazmine's care. Micah claims that upon obtaining custody she learned for the first time that the minor child was admitted to the emergency room on three (3) separate occasions while in Jazmine's custody. Jazmine had allegedly never informed Micah of any hospital visits, and subsequently refused to provide Micah with information related to the medications prescribed to the minor child. Jazmine denies that she withheld minor child's medical problems from Micah. Jazmine states that she tried to call Micah several times on WhatsApp for all three hospital visits, but Micah never answered. Jazmine states that she contacted Micah's mother in order to obtain the minor child's social security number, and Micah's mother then informed Micah about the minor child being in the hospital.

16. On August 12, 2019, Judge Shana Brooks Malone of the Clayton Judicial District of Georgia dismissed Jazmine's *Ex Parte* Emergency Petition for Custody and Registration of Foreign Decree due to her finding that her court was "without jurisdiction to consider this matter."

## PRINCIPLES OF LAW

Guam law provides that a court has jurisdiction over a divorce if at least one party has been a resident of Guam for at least ninety (90) days immediately preceding the filing of a complaint for divorce. 19 GCA § 8318(a). Physical presence by one of the parties in Guam for a period of ninety (90) days prior to filing of the action for divorce or dissolution of marriage shall give rise to a conclusive presumption of jurisdiction. *Id.* Additionally, Guam has jurisdiction over child custody matters if Guam is the home state of the children, which is defined as the "State or Territory in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." 7 GCA § 39102(g).

A court of Guam which has made a child-custody determination has exclusive, continuing jurisdiction over the determination until the court determines that neither the child, the child's parents, and any person acting as a parent has a significant connection with Guam and "substantial evidence is no longer available in Guam concerning the child's care, protection, training, and personal relationships." 7 GCA § 39202. The goal of the "significant connection" inquiry in considering which state's exercise of jurisdiction is in the child's best interest to determine which state has superior access to potentially relevant evidence. *Stelluto v. Stelluto*, 914 So. 2d 34, 40 (La. 2005). California courts have recognized that under the UCCJEA, continuing jurisdiction remains with the state issuing the initial decree if "1) a parent

still resides in the decree state and 2) the child continues to have some connection with the decree state, such as visitation." *Grahm v. Superior Court*, 132 Cal.App.4th 1193 (2005). The *Grahm* Court also opined that "the original state retains continuing exclusive jurisdiction as long as the parent who is exercising visitation rights still lives in that state and the relationship between that parent and the child has not deteriorated to the point at which the exercise of jurisdiction would be unreasonable." *Id.* at 1200.

## DISCUSSION

While the Court properly exercised jurisdiction over this matter at the time of the parties' divorce, the circumstances have changed and it is no longer in the best interests of the minor child for Guam to retain jurisdiction. The Amended Motion for Modification of Child Custody which is presently before the Court requires an evidentiary hearing. There are numerous factual disputes which must be clarified in order for the Court to determine whether a new custody arrangement would be in the best interests of the minor child. An evidentiary hearing will likely require testimony from both parties and several other witnesses, such as Z'a Williams and the mothers of both parties. None of these people currently live on Guam. Micah claims that she plans on moving to Guam after her military service is complete, but she has given no indication of when this may occur.

The Court has entered a Final Decree of Divorce. The Court will not act as an enforcement mechanism when neither the parties nor the minor child live on Guam. The parties are free to have the terms of the Final Decree of Divorce enforced by courts in their respective jurisdictions.

The Court recognizes that the parties entered into a Divorce and Property Settlement Agreement which includes the following provision:

Reservation of Jurisdiction - In the judgment anticipated by this Agreement, there shall be reserved to the Superior Court of Guam, in addition to the jurisdiction specifically mentioned elsewhere in the Agreement, the jurisdiction to:

5. To adjudicate any matter concerning their minor children.

However, the agreement of the parties at the time of divorce is not controlling in light of the fact that Micah, Jazmine, and the minor child have all left Guam and there is no indication as to when they will return. The Court cannot act in the best interests of the child when factual determinations must be made and all of the necessary witnesses reside in another state.

## CONCLUSION

Based on the reasons set forth above, the Court hereby declines jurisdiction over Micah's Amended Motion for Modification of Child Custody. Micah or Jazmine may seek to have orders enforced or modified in a forum with appropriate jurisdiction over the minor child. The Court is precluded from determining the merits of the motion as it no longer has exclusive, continuing jurisdiction.

SO ORDERED, this ___21___ day of ___November___ 2019.

_____
HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

⊔E VIA COURT BOX

⊔⊔⊔ ⊔dge that a copy of the ⊔ginal hereto was placed in the court box of:

_____

Date:__11/21/19__ Time:_3r_

_____
Deputy Clerk, Superior Court of Guam